Yes, sir. Good morning, Your Honor. Scott Hubbard for the plaintiff and appellant, Dimas O'Campo. I know the Court's read the briefs and are familiar with the issues, so unless there's any questions, I'd like to reserve the rest of my time. No, I'm sorry. That's not acceptable. I'd like to hear an argument. I don't understand that tactic when people do that. It's really quite annoying. For me personally, it's been my experience. I've been doing — I mean, granted, I haven't been a Ninth Circuit judge as long as you have. You haven't been a Ninth Circuit judge at all. Not at all. That's true. Forgive me. I misspoke. I'm always nervous up here. I've been doing Ninth Circuit appeals for 12 years, 13 years now, and twice I've been able to convince a judge at oral argument where, in my mind, I actually had an effect on the outcome. Well, that's not true of me. So please tell me, first of all, my — and it really isn't. So my understanding is that basically what we have here is a procedural issue. Yes, Your Honor. For the most part. And what is your argument about why the district judge was wrong in his conclusion with — in her conclusion with regard to the standing question? Forgive me, Your Honor. I didn't catch that last part. Could you repeat it? Well, my — essentially what happened here was the district judge, on summary judgment, said that the pleadings were inadequate. I mean, that's a somewhat unusual situation, right? Is your claim that she should simply have allowed you to make the amendment as if it had been dismissed at the outset, or what exactly is your claim? My claim would be that at that point she should have — if you look to 1653, she should have determined for herself whether or not standing was — existed, and the best way to do that would be either, as Judge Carlton did, issue an OSC for a declaration confirming that standing existed, or allow us to amend the complaint and judge the pleadings at that point. But was the judge obligated to do that? Was an abuse of discretion to decline to do that? I believe, yes, under the Snead opinion from this Court that I cited in the brief ad nauseum. I believe this Court had on prior instances said that if there's a jurisdictional defect in the pleadings, it is preferable — it's actually mandatory — to amend the complaint or allow the plaintiff to amend the complaint rather than dismiss it. What about this — I'm sorry, go ahead. What about this issue of whether we should be looking at Rule 15 or just Rule 16? I think you must concede that there's no effort to make a showing of good cause under Rule 16. There wasn't, but we were operating off of the hearing transcript where the judge basically said, I'm going to let you amend your complaint, and then as we were leaving, said, well, I'm going to decide whether or not to, I forget her exact name. Well, I think that's a good point. I want to hear from your opponent about that, because the parting shot sounds like it's going to be granted, and everything is set aside. All settings are canceled. And so when we focused our response, we focused on the Court's concerns as set forth in the — at the hearing, it was a given in our mind that the Court would allow the scheduling order, which would not allow the amendment out just based on the plain language of the order. We couldn't have done this. We assumed that the judge allowed the motion to be filed based on her statements at the hearing, and then when the defense — when it got kicked back, that was kind of the surprise for us. But allowing a motion to be filed is not an indication that the motion will be granted. That's — the judge just wants to see what your basis is at that point. That's true. But my understanding, or my reading of the judge's order, was not — she was hanging her hat on the good cause argument in that we didn't demonstrate good cause to allow her to amend the — or to warrant amending the scheduling order to bring the motion. Based on her comments and oral argument or the hearing transcript, we were under the impression that the judge had already said, I'm going to amend the scheduling order. Kagan. The defendants didn't file a motion to dismiss for lack of standing, ever. They did not. And they — their motion for summary judgment seemed to understand that you were dealing with wheelchair problems, because it basically discussed wheelchair problems, only in their reply did they say anything to suggest that there was a pleading problem. Yes, Your Honor. So was — and in the Carlton case, you never actually did amend, is that right? No, we did not. Because once you showed that, in fact, he wasn't a wheelchairer, everybody said, oh, fine. Yes. And so if you were to draw any lesson from that incident, it would be that you didn't have to amend, not that you did have to amend. Correct, Your Honor. And I will note that out of the other eastern district judges, out of the dozens of lawsuits Robocampo has filed, none of them, neither defense nor district judges, have complained about or pleading in that respect. So — But, of course, one district court judge is not bound by the rulings of a different district court judge. Exactly. I — that's — that's why judges are different. But in this instance, she did, in fact, draw some lesson from the Judge Carlton incident. I mean, which was essentially you should have known. And the question is, what should you have known? I — you know, I — that — you do take that away from that, but the flip side of that is, as you mentioned before, he didn't have us amend our complaint. And once we produced the evidence that he wasn't a wheelchair, Judge Carlton was satisfied. It was more lenient, but that doesn't mean every judge has to be that lenient. That's true. In every case. And that's why — And it would seem that if you've been afforded that opportunity once, you would learn from that procedure that the next time you shouldn't have to go that far in order to state the standing. But every district judge is different. Mm-hmm. So — Right. That's — So you expect every judge to be lenient? No, but I think that if every district judge we deal with does not have an issue or a problem with our pleading, and then Judge Carlton asks for a declaration establishing our client has standing for wheelchairs, and we provide it, and he does not have an issue with our pleading, then I think at that point, we're pretty comfortable with the — with our pleadings. Oh, you could shore up your pleading so that there's never a question. Absolutely. My life would have been so much easier if we had just slapped a wheelchair in there right out of the chute, no doubt about it. But then the question becomes, is it required that we do so? And I think under — Well, if you're challenging wheelchair barriers, then it's probably you should give some indication in the complaint that the person uses a wheelchair. Otherwise, there's no basis upon which to challenge wheelchair barriers. We did allege his physical disability, his brain damage, his difficulty walking, his difficulty standing, and then in the text of the complaint, we also alleged how these barriers affected him. Now, if you — But you also — I think in the text of the complaint, you also alleged how these barriers affect people in wheelchairs. In other words, I think it specifically dealt with wheelchairs in the complaint. Yes. In the facts section. Yes, Your Honor. Right. So there was some inference that could be drawn from there that — that it was affecting him, because you said it was affecting him.  Your Honor, I have two minutes. Would it be acceptable for me to reserve my time? Thank you. Good morning, Your Honors. Matt Kenefick for Apelli Bed, Bath & Beyond of California. To start off, I'd like to focus on Section 1653. What about the Oliver case? What's the difference? Excuse me? Why shouldn't we just follow the Oliver case and do what they did there? And in what regard do you mean follow the Oliver case? I mean that we should essentially recognize on appeal that there was jurisdiction because there was a — because he put in evidence that he wasn't in a wheelchair. Well, Your Honor, Oliver was actually dismissed, and that was — Oliver v. Ralph, and that was — that was affirmed by this Court. And in Oliver v. Ralph's — I'm sorry. Nevertheless, we need not dismiss Oliver's action. The — we therefore exercise our discretion under 28 U.S.C. 1653 to deem the complaint's defective allegations of jurisdiction amended and the jurisdictional defects pure. Okay. So with regard to that — Which is the question here. So, I mean, that doesn't do a lot of good to stand up here and act as if it has nothing to do with anything. Okay. You're not going to combine with that. So go ahead. Okay. So the reason why the Oliver analysis of 1653 doesn't apply here is before Mr. Ocampo could obtain leave to amend under Section 1653, it's axiomatic, common sense, and other courts have recognized, or the district circuits, rather, have recognized as a law that he must make a threshold showing that the proposed amendment would cure the jurisdictional defect. The proposed amendment here would not have done so. That's a completely different point. Why wouldn't it do so? Why wouldn't it do so? Well, because the jurisdictional defect with the underlying complaint was that Mr. Ocampo alleged wheelchair-related barriers, yet he alleges his disability, that he used a cane, no reference to having a disability that relates. Well, his disability isn't that he uses a cane. It's that he can't walk. He — it's — his disability says that he has a — Mr. Ocampo has severe brain damage which affects his ability to walk, talk, and see. It doesn't say that he can't walk. It says it affects it. And the allegation was that he requires the use of a cane when traveling in public. And as this Court knows, each person's disability is different and unique. And based upon that allegation, it doesn't necessarily infer the use of a wheelchair. In fact, it infers the opposite because of the lack of the mention of a wheelchair. So — Well, I don't know if you were the lawyer below, but your client knew that he was in a wheelchair. Isn't that true? My client did not. Well, I thought there's evidence in the record that — well, your client knew he was in a wheelchair based on the response to the motion for assembly judgment, clearly. Correct. I thought there was — excuse me. I thought there was evidence that, in connection with other litigation, that your client knew that he was in a wheelchair. Well, let's talk about that. So the argument is, is that because my law firm, which has more than 100 attorneys, handled a different case. Well, but that's the argument that was being made on the other side. I mean, you're the one who raised that argument. You're the one who — you're — I mean, you, meaning your clients, I don't know if it was you or the lawyer at the time, raised the Judge Carlton case to begin with. We did. Right. And you said that because Mr. Hubbard was the lawyer in the other case, he should have known. So, I mean, either you're both right or you're both wrong, and maybe we should just forget about Judge Carlton. Well, there's an apple and an orange, and let me tell you why. The apple here is that Mr. Hubbard's office represented Mr. Ocampo in the other case. My firm represented a different client in a different case. But what they actually got out of the other case was they didn't have to amend the complaint. Well, the other case, they did amend the complaint. No, they didn't amend the complaint. Judge Carlton just said, fine, okay, now you've shown you're in a wheelchair, forget it. Well, in the Judge Carlton case, they cured the defect, but they did it. They didn't cure the defect. They simply did what they did here, which is demonstrate that, in fact, he was in a wheelchair. And we don't have that here. Yes, we do. We don't have a demonstration that — we have no evidence in the record that Mr. Ocampo was in a wheelchair during that time period while visiting Bed Bath & Beyond. I thought that's what his declaration of summary judgment said. His declaration says that when he's in public for more than 10 or 15 minutes, he uses a wheelchair. Okay. Now, what it doesn't say is that in 2010, during the alleged visits, he was using a wheelchair back then. What it doesn't say is in 2010 he used a wheelchair when visiting the Bed Bath & Beyond Club. The district court did not suggest that that was the reason why she didn't allow the amendment. Well, unfortunately, Section 1653 wasn't raised at the court below. However, if you apply that template, the court below had it right. And they — she did not, and Judge Mueller did not abuse her discretion. The district court, as we know, is the forum that decides whether or not — Can you tell me something? Why — and this is a query, because I don't know the answer to it. As a general matter, when a complaint is dismissed, the district judge is supposed to give leave to amend, right? In other words, if you had made a motion to dismiss on the same ground — Yes. — and it had been dismissed for lack of standing, there would have been — there would have been an all probability and abusive discretion for the district judge to not give leave to amend. If at an earlier stage in litigation. Correct. But you didn't make a motion to dismiss, right? You seemed happy with the complaint as such. Yes. And even in your motion to summary judgment, you didn't raise this. Your motion goes on and treats with as if the wheelchair is the issue. And then the judge raised — I think you may have mentioned it in your reply in summary judgment, but not before that. You go on to the merits of a wheelchair access problem in your motion to summary judgment. The district judge then raises this sui sponte. Why isn't that the same as if — I mean, should you — the fact that no one had ever raised this problem before puts them in a worse position in terms of their ability to amend? Well, first of all, Your Honor, it's — the lack of subject matter jurisdiction can be raised at any time. And the fact that — Well, but it's curable. It's easily curable. So that's — I mean, it means blinkering the actual facts to say there wasn't subject matter jurisdiction. You have to sort of be a pleading purist to say that there wasn't subject matter jurisdiction. So the question is why it is that if you had made the motion to dismiss originally, he would have had the leave to amend. Why doesn't he get the leave to amend now? Well, I believe Judge Mueller actually pointed it out. She said — she said very clearly that if plaintiff could make the requisite allegations comporting with Rule 11, that would cure the situation. The allegations that the plaintiff offered for his amended, proposed amended complaint and also in his declaration did not cure the defect. But that wasn't the — that was not the basis on which she denied it. She denied it on a — on a Rule 16 theory, that he — that he didn't show good cause, even though, as you say, she did say, if he makes the accurate — accurate allegations with her, that she would allow it, and then she didn't allow it. But those allegations never came forward. We never had an allegation that Mr. Ocampo suffered a personalized injury by encountering wheelchair-related barriers while using a wheelchair at the Bed Bath & Beyond store. That was never offered. That's the basis on which Judge Mueller denied the motion. The basis that Judge Mueller denied the motion in her order does not reference that. That is correct. But if we look back on that, Judge Mueller's analysis did not abuse its discretion, because if you were to apply the 1653 template, which, like we said, was not raised, unfortunately, below by Mr. Ocampo, Judge Mueller reached the right decision. Because Mr. Ocampo did not make the requisite offer of proof that would cure the jurisdictional  Kagan Well, that doesn't prove that she didn't abuse her discretion. It proves that she did abuse her discretion, but she might have been able to exercise it on a different ground. And we ought to ask her if that's what — if our conclusion is that she abused her discretion, but there might be another ground on which to deny it, then we ought to send it back, right? Well, Your Honor, under any analysis, the proposed amendment wouldn't cure the jurisdictional defect, and therefore, according to this Court's holding in Morongo Band of Indians, the Court never had jurisdiction to begin with. And the reason you say that it didn't was because he doesn't say that he went there in his wheelchair? Correct. It's notably absent, it's markedly absent, the allegation that Mr. Ocampo ever in 2010, when the complaint was filed, went to the subject Bed, Bath and Beyond in a wheelchair and encountered these barriers. But isn't that a fair inference from the fact that he uses a wheelchair when traveling in public for more than 10 to 15 minutes, that when he went there, he was using his wheelchair, even though when you get to the merits of his claim against Bed, Bath and Beyond, it all has to do with wheelchairs? Well, let's talk about inferences. There's no allegation that he went to the Bed, Bath and Beyond store for more than 10 or 15 minutes to suggest that. Mr. Ocampo may use other mobility-assisted devices which aren't alleged. Mr. Ocampo may use other types of mobility-assisted devices which could invoke other barriers. But it's not alleged in the complaint, the operative pleading, the pleading which gives jurisdiction to this Court, it's not alleged that he went to the subject Bed, Bath and Beyond store. It's not alleged that he went there in a wheelchair and encountered wheelchair-related  It is alleged that he went there and encountered a wheelchair. He visited the facility and encountered barriers and interfered with his ability to use and enjoy the goods. Then you go through the bases and they are wheelchair-related issues, right? It's not alleged that he encountered those barriers while in a wheelchair. And, in fact, it's not alleged that an able-bodied person could go there and observe barriers to people who, if they were in wheelchairs, would deny access, but because the able-bodied person is not in a wheelchair, that would not be a violation of the ADA as to that person. Is that your understanding? Correct. It's not just an able-bodied person. Different disabilities invoke different barriers. For example, a blind person may have different barriers than a person in a wheelchair. Same thing here. A cane user, somebody who can walk, doesn't have standing to assert barriers that he or she asserts while walking that relate to wheelchair use. And that's consistent with every ruling that this Court has made. It appears that the district court judge resolved this case on the basis of Rule 16 as opposed to Rule 15. So how do you square those two rules? How should we determine whether or not she abused her discretion in relying on Rule 16 as opposed to Rule 15? Well, the Rule 16 analysis does come into play here because Mr. Ocampo was seeking to amend his complaint 15 months after the period to amend had expired under the scheduling order. I'd like to point out in the Oliver v. Ralph's case, Mr. Oliver had failed to amend two weeks after his scheduling order had expired. But Rule 15 says that leave to amend should be liberally given. So how do you square that with the resolution of the leave to amend in this case? Well, in this case, Mr. Ocampo was seeking to amend, and not just amend to add a jurisdictional statement such as a domiciliary. He was seeking to amend, to substantively change the allegations of this case going to the mayor. Kagan. He wasn't changing them. I mean, there was nothing in the complaint that said he wasn't in a wheelchair. He was seeking to add 27 new disabled access barriers. I'm sorry? He was seeking in his proposed amendment to add 27 new disabled access barriers which were not raised before. He was also seeking to say for the first time that he used a wheelchair. That was the use of a wheelchair was not alleged in the underlying complaint. By him, it was alleged that there was a wheelchair, right, previously. It was never alleged in the original complaint. It was not alleged in the underlying complaint. In the original complaint, it was alleged that he walked with the use of a cane. The proposed amended complaint said that when he was in public for 10 or 15 minutes or more that he would use a wheelchair. Now, mind you, we're talking 21 months after the complaint had been filed, 15 months after the period of time to amend had expired. During that time period, Mr. Ocampo, he had his bite at the apple. He settled with six other defendants. We had the very last minute after expert discovery had come and gone, fact discovery had come and gone, we had both sides have worked on affirmative defenses. But you knew that the issues were wheelchair-related issues, because that's what your motion for summary judgment was about. When you go for summary judgment and you went through the issues that he had raised, you tried to demonstrate why there wasn't an issue about wheelchairs, but you didn't have any doubt that the case was about wheelchairs, did you? We knew that Mr. Ocampo obviously was asserting wheelchair-related barriers, which we believe were merits. And you didn't say, but he wasn't in a wheelchair. We did raise that ultimately in our pleadings. Ultimately, but not in your motion for summary judgment. So it wasn't even like you were misled, in fact, as to what the case was about. Well, Your Honor, it's not our job to monitor their complaint. When we had, by the time we had gotten to this point, by the time we had, we were at summary judgment, we were close to trial, everything had closed. And at that point, the state of the pleadings, we had not, had been settled. We had not deposed Mr. Ocampo based upon the allegations that were there. And obviously, he's the master of his complaint. And if the Court doesn't have jurisdiction to begin with, it doesn't have jurisdiction to grant him leave to amend. Okay. You have more than enough time, and thank you very much for your argument. Thank you, Your Honor. Mr. Hubbard, you have a little time left. Thank you, Your Honor. Three points I'd like to make. But first, are there any questions you'd like to ask me before we begin? Well, it seems to me that the question is, is your current complaint sufficient and does that matter? Is the current claim sufficient? Yes. I.e., with regard to, it does say that he uses a wheelchair when traveling in public, and it doesn't specifically say he used his wheelchair when he went to Bed, Bath, and Beyond. Is that right? I'm sorry. Could you repeat yourself, please, Your Honor? It doesn't say specifically that he used his wheelchair when he went to Bed, Bath, and Beyond, although one could argue that was the inference. But it doesn't say that. That seems to be the objection that's being made. That's true. And I don't think it matters from a standing standpoint, as this Court established in Chapman v. Pier 1, that you can – disabled plaintiffs have standing to remove unencountered barriers that relate to their disability. So even if he was walking and saw it and knew it using his cane versus being in a wheelchair, rolling, encountering it, he would still have standing under the – under this Court's authority. Because he might come back sometime in a wheelchair? Might come back sometime in a wheelchair or Christmas shopping. It's more than 15 minutes. Isn't that speculative? Under Rule 8, don't you need a little more than that to state a claim? No. All you need, the minimum you need, is knowledge of – actual knowledge or actually encountering an architectural barrier that relates to disabled individuals' disability. And that was from the Dorn v. 7-11 analysis. So that would be the first thing. The second thing is opposing counsel said that we included 27 new barriers. We didn't. If you look at the supplemental excerpts of record, it's the same barriers we included in the first complaint. It's on page 13 and 14, SCR 13 and 14. The last point I want to make is that our client, you can't amend the complaint – standing is determined at the time the complaint was filed. And when the complaint was filed, Rob Ocampo uses a wheelchair. So if you don't say that in the complaint, you have an established standing. If you don't say that he's in – uses a wheelchair in the complaint, under 1653, you should have a chance to amend it to say that. If he didn't use a wheelchair. Even 21 months after the time has expired for you to amend your complaint? Even two weeks after we learned that the district judge is having problems. If it's 21 months, yes, we didn't know. But there is not an unlimited amount of time. The judge has control over the calendar. And once the scheduling order is entered, that takes control of the litigation. And the attorneys cannot just hijack the process. I would beg to differ on 1653 only. Only in that regard. Because it says at any stage in the proceeding, including appeal. So if you can make it – if you can allege sufficient allegations of standing at the age of 15 or 16, you can do it at any time. I don't think it's ruled out. But what case says that? That you can amend your pleading at any time? It's – Fifty years after the case, you could amend your pleadings? I – That's a very expansive statement. It is, Your Honor. I didn't say 50 years. But we did – But you said any time. That's true. But I also said appeal. The case was – Some appeals have lasted that long. Don't tell me that. I'm arguing Chapman Pure One tomorrow. The case was Snell. Snell v. Cleveland. My apologies. And I cite to it on page 26 of our brief. And that was the one that cited the plain text of 1653, which said that it could be amended on appeal. And case in point, Oliver was amended on appeal, too. And the simple fact is – Is that a Rule 16 case? No. Yes. Yes, it was. Now that I think about it, it was Rule 16. But I'd like to ask this quite briefly because your time is up. But the question of the interaction of Rule 15 and Rule 16 that Judge Rolandson raised. And I'm not at all – and what happened here was that the case was dismissed – there was no motion to dismiss. And it wasn't – unlike in the Judge Carlton situation, the problem wasn't raised by the judge. And so, essentially, it was dismissed on the pleadings, even though nobody had been challenged and weren't challenged, and nobody had raised the pleadings. So in terms of lateness, the kind of lateness is on both sides because nobody had ever raised the issue. So does Rule 15, in your view, essentially trump Rule 16 if nobody – if it's being dismissed on the pleadings after the point at which the pleadings could have been challenged and weren't? I'd like to say yes, because it would really help my position, but I think under this Court's binding precedent, no. Once the Court issues Rule 16 scheduling orders, Rule 16 governs. Before that – I mean, there's a general philosophy of Rule 15 that amendments should be liberally given and – If it's being – I mean, to me, if it's being dismissed on the pleadings – and this only got to this point because it was never raised. Nobody ever raised the problem. If it had been raised by the defendant, it would have taken care of itself, but it wasn't raised. So it was – in some ways, it's sort of a pots and both your houses, because everybody sort of let this thing go by. And frankly, if this had been anything other than standing, we might be – we'd be having a very different conversation right now, or Federal jurisdiction, we'd be having a very different conversation right now, because there has to be – There's something a little peculiar about the fact that you'd be better off on a jurisdictional point than on a non-jurisdictional point. That doesn't seem right. At least with a jurisdictional point, we have Congress's instruction under 1653. Okay. Thank you. And Oliver was not a Rule 16 case. It – Oliver wasn't dismissed on Rule 16. Oliver – we had alleged barriers in Oliver. My father, against my instructions, decided he wanted to amend his complaint and allege more barriers. I said, Dad, that's not the law. Okay. We don't need all of that. So those additional barriers were not – were excluded out of Rule 16. Wasn't out of Rule 16. I thought it was a Rule 16 case. No? It wasn't a Rule 16 case? It was a Rule 16 case. Where is the Rule 16 language in there, then? Show me where the Rule 16 language is in Oliver. This is inside baseball, Your Honor. Well, I'm talking about in the ruling in Oliver. It's not in there. Is there a discussion of Rule 16? No, Your Honor. I didn't think so. Okay. Forgive me. I was a little bit confused. In the published opinion from this Court, it does not talk about Rule 16. If you go to the district court level, that's where – That's interesting. Fair enough, Your Honor. Thank you. Thank you very much. Thank you both for your argument. The case of Ocampo v. Chico Crossroads is submitted.
judges: Lynn, Berzon, Rawlinson